United States District Court
Middle District of Florida
Jacksonville Division

**FRIENDS OF ETNA TURPENTINE CAMP, INC.,**

     *Plaintiff,*

v.                           **NO. 3:17-cv-1409-J-34PDB**

**UNITED STATES FISH AND WILDLIFE SERVICE**
**& UNITED STATES DEPARTMENT OF THE INTERIOR,**

     *Defendants.*

---

# Report & Recommendation

The plaintiff, Friends of Etna Turpentine Camp, Inc. ("Etna"), brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of information maintained by the defendants, the United States Department of the Interior and the United States Fish and Wildlife Service (collectively, "FWS"). Following the FWS's final disclosure of information, the Court denied as moot Etna's motion for summary judgment and denied without prejudice the FWS's motion to dismiss. Docs. 29, 30.

Before the Court is Etna's motion for an award of $18,150 in attorney's fees and $447.20 in costs, Doc. 31, the FWS's response, Doc. 32,[1] and Etna's reply, Doc. 34. With the motion, Etna provides billing records, Doc. 31-1, declarations of its

---

[1] In its response—already at the 20-page limit under Local Rule 3.01(b)—the FWS purports to "incorporate by reference" pages 7 through 18 of a response to a previous motion for attorney's fees and costs. Doc. 32 at 3–4 (citing Doc. 26 at 7–18). Incorporation by reference is inappropriate because it effectively skirts the page limit and foists on the Court the burden of finding the referenced information. To avoid delay in deciding the current motion for attorney's fees and costs, the undersigned does not strike the response.

lawyers (Robert Hartsell and Heidi Mehaffey), Docs. 31-2, 31-3, and a declaration of an expert on rates (Marcy Lahart), Doc. 31-4.

The threshold issue is whether Etna is eligible for attorney's fees and costs under the FOIA, which requires a determination of whether Etna meets its burden of showing it "substantially prevailed" in this action. *See* 5 U.S.C. § 552(a)(4)(E)(i) (quoted). The motion was referred to the undersigned for a report and recommendation on an appropriate resolution. Doc. 33.

## I.    Background

The Etna Turpentine Camp is a federally designated historical site in Citrus County, Florida. Doc. 1 ¶ 10. In a related action, this Court described the Etna Turpentine Camp:

> Hidden within the Withlacoochee State Forest is the Etna Turpentine Camp, which was lost to time until its discovery in the early 1990s and listed on the National Register of Historic Places in December 2009. Etna was a turpentine still complex and town in the early 1900s. Recent data recovery excavations discovered the intact foundation of a turpentine still, as well as items scattered throughout what was the camp and home sites of its workers. The items include bricks, ceramic, glass, coins, toys, pencils, and hearty cups (or fragments of them), which were used to collect the resin from pine trees to produce the turpentine.

Doc. 46 at 1 in *Friends of Etna Turpentine Camp, Inc., v. U.S. Dep't of the Interior, etc.*, 5:18-cv-291-Oc-30PRL.

Plaintiff Etna is a nonprofit Florida corporation formed for the "protection of historical, air, water, natural and cultural resources" of the Etna Turpentine Camp. Doc. 1 ¶ 5. Defendant FWS is a bureau within defendant United States Department of the Interior. Doc. 1 ¶¶ 7, 8; Doc. 6 ¶¶ 7, 8.

Underlying this FOIA action is a permit for a state project issued in July 2017 by the FWS to the Florida Department of Transportation. *See generally* Doc. 1. In the

related action, this Court described the permit, the project, and the "section 106" review:[2]

> Etna is located near and adjacent to a power line and gas pipeline easement (the construction of which actually lead to its discovery), but is about to be lost to a highway, as it sits in its direct path.
>
> The Suncoast Parkway is a toll road that runs north from Tampa, coming up through Pasco County and currently ending at U.S. Highway 98 in Hernando County, just south of Citrus. The Florida Department of Transportation, through the Florida Turnpike Enterprise …, is building the Suncoast Parkway II, which will start where the Suncoast Parkway currently ends and travel 13.5 miles north, coming up through the Withlacoochee State Forest and the Etna Turpentine Camp, while traveling adjacent to the existing power line and gas pipeline easement on the edge, but within, the state forest. The terminus is at State Road 44, an existing east to west corridor that can take a traveler west to Crystal River (both the city and the river that connects to the Gulf of Mexico) or East to Inverness and then an Interstate 75 interchange, located just north of the start of Florida's Turnpike.
>
> …
>
> The FWS prepared an Environmental Assessment in May 2016, addressing, among other things, the need for the project, the impacts, mitigation, and the alternatives, including a no action alternative. It incorporates the State's Habitat Conservation Plan, which also addresses impacts on the species, mitigation measures, and consideration of alternatives. The FWS issued a biological opinion in July 2017 laying out the history of its review, including the State's Habitat Conservation Plan, an assessment of impacts on the species in the action area and mitigation, as well as noting the Section 106 review. … The FWS then issued its [Finding of No Significant Impact] in July 2017, reviewing its analysis and findings as to the species and Etna, and ultimately issued the permit shortly thereafter.

Doc. 46 at 1–2, 4 in 5:18-cv-291.

---

[2] "Section 106," which is part of the National Historic Preservation Act, requires federal agencies to consider the effect of their actions on historic properties. *See* 54 U.S.C. § 306108.

## II.      Facts and Procedural History

These facts are from the pleadings, Docs. 1, 6, documents attached to the complaint, Docs. 1-1–1-12, documents submitted with Etna's motion for summary judgment and FWS's response to that motion, Docs. 15-1–15-4, 17, and the declarations submitted with Etna's current motion for attorney's fees and costs, Docs. 31-1–31-4. These facts are undisputed; the FWS incorporates into its response the factual background in Etna's motion, and neither side requests an evidentiary hearing. *See* Doc. 32 at 2 (the FWS's response incorporating pages 2 through 5 of Etna's motion).

### A.      *Pre-Action Events*

Since August 2016, the law firm of Robert N. Hartsell, P.A., has been legal counsel for Etna. Doc. 31-2 ¶ 8.

Sometime in 2017, Etna asked its counsel to initiate a FOIA request to FWS for "decisional documents" supporting the FWS's July 2017 permit to the Florida Department of Transportation. Doc. 31-2 ¶ 9.

On August 29, 2017—the month after issuance of the permit—Etna, through counsel, submitted a written FOIA request to the FWS. Doc. 1-1. Etna requested nine categories of information relating to the project, the issuance of the permit, the biological assessment that supported the permit, and the section 106 review. Doc. 1-1 at 2–3.

With the FOIA request, Etna sought a fee waiver but explained it would pay all fees associated with the FOIA request if no waiver was granted and wanted to avoid any delay associated with a waiver determination. Doc. 1-1 at 3–4. To support waiver, Etna contended the requested information concerned a matter of public interest; specifically, highly controversial governmental actions or inactions that allow encroaching on and destroying the habitats of listed species and a federally

4

designated historical site. Doc. 1-1 at 4–6. Because the FWS never requested fees, Etna now assumes the waiver was granted. Doc. 31 at 2.

On September 5, 2017, the FWS received Etna's FOIA request. Doc. 1 ¶ 11; Doc. 6 ¶ 11. The same day, Tiffany McClurkin, a FOIA coordinator with the FWS, emailed receipt acknowledgment. Doc. 1-2 at 2.

The statutory deadline for the FWS to determine whether to comply with the FOIA request was October 2, 2017.[3] Doc. 1 ¶ 12; Doc. 6 ¶ 12.

On October 6, 2017, Etna, through counsel, emailed Ms. McClurkin, "Please provide a status of the fulfillment of the … FOIA request that was submitted at the end of August. It has been over a month and we have yet to receive any responsive documents. Your attention to this matter is greatly appreciated." Doc. 1-3 at 2.

On October 12, 2017, Etna, through counsel, again emailed Ms. McClurkin for a status of Etna's FOIA request. Doc. 1-4 at 2. Counsel stated, "If the fulfillment of our request can be expedited as to certain documents, please produce[] whatever documents are available at the time being." Doc. 1-4 at 2. Counsel explained Etna was particularly interested in obtaining documents in three categories: (1) a biological assessment by FWS biologists referenced in a particular communication; (2) any

---

[3]Regulations govern FOIA requests to bureaus in the United States Department of the Interior. A "bureau" is "any major component of the Department [of the Interior] administering its own FOIA program." 43 C.F.R. § 2.70.

"Ordinarily, a bureau has 20 workdays (including the date of receipt) to determine whether to comply with a [FOIA] request, but unusual circumstances may allow the bureau to take longer than 20 workdays." 43 C.F.R. § 2.16.

FWS admits in its answer this allegation in Etna's complaint: "The statutory deadline for FWS to produce records respons[ive] to Plaintiff's request was October 2, [2]017." *See* Doc. 1 ¶ 12; Doc. 6 ¶ 12. But in its opposition to Etna's motion for attorney's fees and costs, the FWS explains an agency need only issue its determination of whether to comply with a FOIA request within 20 days, not produce the requested information within 20 days. Doc. 32 at 7–8 (citing *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013)).

biological assessment the FWS made, reviewed, or approved to support the permit; and (3) a record of decisions by the FWS for the permit and the section 106 review. Doc. 1-4 at 2. The FWS never determined whether expedited processing would be granted.[4] Doc. 1 ¶ 15; Doc. 6 ¶ 15.

---

[4]Section 552(a)(6)(E)(i) provides, "Each agency shall promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records—(I) in cases in which the person requesting the records demonstrates a compelling need."

Section 552(a)(6)(E)(ii) provides, "Notwithstanding clause (i), regulations under this subparagraph must ensure—(I) that a determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request; and (II) expeditious consideration of administrative appeals of such determinations of whether to provide expedited processing."

The regulations for expedited processing for bureaus in the United States Department of the Interior are in 43 C.F.R. § 2.20. If a requester seeks expedited processing, the requester must "submit a statement" that (1) explains in "detail" how the request meets a criterion for expedited processing and (2) certifies that the "explanation is true and correct to the best of your knowledge and belief." 43 C.F.R. § 2.20(b). Circumstances that demonstrate a compelling need are:

(1)    Where failure to expedite the request could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or

(2)    Where there is an urgency to inform the public about an actual or alleged Federal Government activity and the request is made by a person primarily engaged in disseminating information.

    (i)    In most situations, a person primarily engaged in disseminating information will be a representative of the news media.

    (ii)    If you are not a full time member of the news media, to qualify for expedited processing here, you must establish that your main professional activity or occupation is information dissemination, although it need not be your sole occupation.

    (iii)    The requested information must be the type of information which has particular value that will be lost if not disseminated quickly; this ordinarily refers to a breaking news story of general public interest.

On October 17, 2017, state entities procured the contract to begin construction of the project. Doc. 1 ¶ 28; Doc. 31 at 7.

On October 20, 2017, Ms. McClurkin emailed counsel for Etna, "Thanks for contacting my office this morning regarding a status update of your request. Per our discussion, the responsive records are currently with the Ecological Services FOIA Point of Contact (POC) for review. I contacted the FOIA POC and he is currently reviewing some of the responsive records." Doc. 1-5 at 2. Ms. McClurkin continued, "I would like to apologize for any delay of response to your FOIA; however, our office handles FOIAs on a first in, first out basis. We hope to have a response to you soon. Thanks so much for your patience."[5] Doc. 1-5 at 2.

---

(iv)   Information of historical interest only or information sought for litigation or commercial activities would not qualify, nor would a news media deadline unrelated to breaking news.

43 C.F.R. § 2.20(a).

The October 12 email to Ms. McClurkin does not include an explanation or certification. *See generally* Doc. 1-4.

[5]"[A] bureau ordinarily will respond to [FOIA] requests according to their order of receipt within their processing track." 43 C.F.R. § 2.14. Regulations explain:

(a)   Bureaus use processing tracks to distinguish simple requests from more complex ones on the basis of the estimated number of workdays needed to process the request.

(b)   In determining the number of workdays needed to process the request, the bureau considers factors such as the number of pages involved in processing the request or the need for consultations.

(c)   The basic processing tracks are designated as follows:

(1)   Simple: requests in this track will take between one to five workdays to process;

(2)   Normal: requests in this track will take between six to twenty workdays to process;

(3)   Complex: requests in this track will take between twenty-one workdays and sixty workdays to process; or

On November 1, 2017, Ms. McClurkin emailed counsel for Etna:

> I am in possession and currently reviewing some of the documents responsive to your request. This response will serve as [our] first partial response. After my review is complete, the responsive documents are routed internally and then to the Solicitor for review. Upon completion of the Solicitor's review, it is routed for signature before sending to you. Please allow our office until November 17, 2017 to get the first partial response sent to you. We may be able to get the response to you sooner. We will continue working on the remaining responsive documents and release them to you as they are reviewed/approved for release. I will definitely keep you updated. Thanks so much for your continued patience!

Doc. 1-6 at 2.

On November 3, 2017, counsel for Etna emailed Ms. McClurkin:

> Thank you for your estimated time of turnover, however it is imperative that we be able to review the documents as soon as possible. This FOIA request has been pending for approximately 66 days, and within this timeframe [the Florida Department of Transportation] has already

---

       (4)      Exceptional/Voluminous: requests in this track involve very complex processing challenges, which may include a large number of potentially responsive records, and will take over sixty workdays to process.

(d)     Bureaus also have a specific processing track for requests that are granted expedited processing under the standards in § 2.20 of this part. These requests will be processed as soon as practicable.

(e)      when appropriate, will offer you an opportunity to narrow your request so that it can be placed in a different processing track. If you request placement in a particular processing track but the bureau places you in a different processing track, the bureau will provide you with an explanation of why you were not placed in the processing track you requested.

(f)     The use of multitrack processing does not alter the statutory deadline for a bureau to determine whether to comply with your FOIA request (see § 2.16 of this part).

(g)     You may track the status of your request, including its estimated processing completion date, at https://foia.doi.gov/requeststatus/.

43 C.F.R. § 2.15.

solicited and accepted a bid to begin construction on the subject project, Suncoast Parkway II, to which the FWS issued a permit for takings. We have repeatedly asked for our request to be expedited as it is necessary for us, as interested parties in the preservation of the Etna Turpentine Camp listed on the National Register of Historic Places, to review the documentation that was the basis of the grant of the permit to [the Florida Department] and [the Florida Turnpike Enterprise].

Again, please expedite our request for the documents as soon as you are able. We greatly appreciate your cooperation in this matter.

Doc. 1-7 at 2.

On November 22, 2017, Ms. McClurkin emailed counsel for Etna, "Yesterday was my first day back in the office. I have been on leave. The first response was just signed by the Regional Director to be sent to the Solicitor's Office for review. I will mail those documents to the Solicitor's Office today so hopefully they will receive them on Friday for review. I will check with the Program Point of Contact (POC) on a second response. Thanks!" Doc. 1-8 at 2.

By December 1, 2017, FWS had sent no responsive documents, prompting Etna's counsel to begin drafting a warning letter. Doc. 31-2 ¶ 12.

On December 5, 2017, Etna, through counsel, sent a warning letter to Carrie Hyde-Michaels, a FOIA Public Liaison for the FWS, requesting dispute resolution.[6] Doc. 1-9 at 2–4. Etna summarized the course of events and stated, "[O]ver 70 workdays have elapsed and many of the FOIA representatives that we have contacted have a duty to make this request a priority. Upon information and belief the fulfillment of the request has made minimal progress for over three months. It has been upon consistent communication by undersigned counsel that we have received any status updates on the pending request." Doc. 1-9 at 2. Etna warned:

---

[6]"Each bureau has a FOIA Public Liaison who can assist requesters who have concerns about the service they received when seeking records[.]" 43 C.F.R. § 2.66(a).

> At this time we are placing you on notice that if we do not have possession of responsive documents within 5 business days of receipt of this letter of intent, we will be filing legal action to comp[el] compliance with FOIA. We have repeatedly requested expedited processing and informed the FOIA Coordinator that time is of the essence in this matter as it is pertinent we receive these documents at once since the Suncoast Parkway II is underway and the Etna Turpentine Camp is at risk of destruction.

Doc. 1-9 at 3. "The intent of the [letter] was to allow the [FWS] the opportunity to avoid litigation by complying with" the FOIA. Doc. 31-2 ¶ 13.

> The next day, on December 6, 2017, Ms. Hyde-Michaels responded by email:

> We process our FOIA requests on a first in, first out basis according to the processing track to which they are assigned. Your request is currently 10th in Region 4's Exceptional Voluminous track, which is the track for requests requiring more than 60 workdays for processing.

> You may narrow the scope of your request to obtain quicker processing in your currently [] assigned track or to move the request into a faster processing track. If you have any questions about this, please let me know and I would be happy to assist you.

> If you do not wish to narrow, our Region 4 FOIA contact will continue to work diligently to process all requests, including yours, in the order in which they were received within their assigned processing track.

> Please let me know if you have any further questions regarding your request.

Doc. 1-10 at 2.

> Later that day, counsel for Etna replied by email:

> With all due respect, this is the very first time that we have been notified of our place on a "track" and the amount of days necessary for fulfillment. We were not informed 20 workdays after the request was submitted and have instead been awaiting the documents that we were informed would be ready for disclosure on Nov. 17.

> I have been communicating with the 4 FOIA contact since October and was not informed that there would be a substantial delay of more than 60 days until this morning. Regardless of this new information, the request has remained unfulfilled for more than 70 days, and as stated in my correspondence to you yesterday, we have in fact narrowed the scope of the request and on October 12 asked for it to be expedited as to these documents[.]

Doc. 1-11 at 2. Counsel described the three limited categories from the October 12, 2017, email, Doc. 1-4 at 2, and continued:

> It is my understanding from the 4 FOIA contact that the documents have already been reviewed by her and are with the attorney for final review. This would indicate to me that the documents are nearly ripe for disclosure, however it has been almost a month since we were informed that the documents would be routed to the attorney.
>
> Please advise the Solicitor's Office that those documents in his or her review have been requested to be expedited and should be a top priority. The documents pertain to a permit issued by the FWS to [the Florida Department of Transportation] to construct the Suncoast Parkway II and destroy a federally listed historic site. It is imperative that the request be expedited before permanent destruction to the Etna Turpentine Camp cannot be remedied.
>
> Thank you for your assistance in this matter.

Doc. 1-11 at 2.

## B.  *Filing of This Action*

On December 18, 2017, having received no documents responsive to the FOIA request, the plaintiff filed this action in the Ocala Division, asking the Court to: (1) "Order Defendants to comply with the [FOIA]"; (2) "Order Defendants to provide access to the requested documents"; (3) "Expedite this proceeding as provided for in 28 U.S.C. § 1657";[7] (4) "Award Plaintiff costs and reasonable attorney[']s fees in this

---

[7]Section 1657 provides:

Notwithstanding any other provision of law, each court of the United States shall determine the order in which civil actions are heard and determined,

action, as provided in 5 U.S.C. § 552(a)(4)(E)";[8] and (5) "Grant such other and further relief as may deem just and proper."[9] Doc. 1 at 7.

### C.   *Post-Filing Events*

In a mailing dated December 22, 2017, and received December 27, 2017, Mike Oetker, the Acting Regional Director of the FWS, provided documents to counsel for Etna "as a partial response" to the FOIA request. Doc. 15-1. He explained,

> We have searched our records and have located a number of documents that appear responsive to your request. At this time we have reviewed eighty-six (86) documents that are responsive to your request. We are releasing thirty (30) of the documents in their entireties. After consulting with the Office of the Regional Solicitor, we have determined that twenty-three (23) of the eighty-six (86) documents are exempt in their entireties from disclosure pursuant to Exemption 5, 5 U.S.C § 552[b](5), of the FOIA. The remaining thirty-three (33) documents are exempt from disclosure, in part, pursuant to Exemptions 5 and 6 of the FOIA. Additional documents that we believe to be responsive still need to be reviewed for possible withholding and will be provided at a later date.[10]

---

> except that the court shall expedite the consideration of any action brought under chapter 153 or section 1826 of this title, any action for temporary or preliminary injunctive relief, or any other action if good cause therefor is shown. For purposes of this subsection, "good cause" is shown if a right under the Constitution of the United States or a Federal Statute (including rights under [FOIA]) would be maintained in a factual context that indicates that a request for expedited consideration has merit.

28 U.S.C. § 1657(a).

[8]Section 552(a)(4)(E) is the provision under which Etna now brings its motion for attorney's fees and costs.

[9]Etna filed this action in the Ocala Division. Doc. 1. Finding this action should be transferred here because the requested documents are here, United States District Judge James Moody sua sponte transferred the action to the Jacksonville Division. Doc. 3.

[10]Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." 5 U.S.C. § 552(b)(5). Exemption 6 protects from disclosure "personnel and

Doc. 15-1 at 1–5. Mr. Oetker then described the exemptions. Doc. 15-1 at 4–5.

On January 8, 2018, Etna completed service of the summons and complaint. Docs. 5, 5-1, 5-2, 5-3, 5-4.

In a mailing dated February 1, 2018, and received on February 2, 2018, Leopoldo Miranda, an Assistant Regional Director of the FWS, provided documents to counsel for Etna as a "second partial response" to the FOIA request. Doc. 15-2 at 2–4. He explained, "We have searched our files and have located nine (9) documents that are responsive to your request. We are releasing nine (9) documents in their entirety (186 pages). Other documents that we believe to be responsive still need to be reviewed for possible withholding and will be provided in subsequent responses." Doc. 15-2 at 4.

On February 7, 2018, the defendants answered the complaint and asserted six affirmative defenses. Doc. 6. A few days later, the Court confirmed subject-matter jurisdiction, Doc. 9, and directed the parties to confer and file a joint proposed briefing schedule, Doc. 8.

On February 28, 2018, the parties provided a proposed briefing schedule. Doc. 12. A few days later, mirroring the proposed briefing schedule, the Court ordered the plaintiff to move for summary judgment no later than March 16, 2018, and the defendants to respond no later than April 16, 2018. Doc. 14.

During the same month—February 2018—construction on the project began. Doc. 1 ¶ 28; Doc. 31 at 7.

In a mailing dated March 9, 2018, and received March 12, 2018, Ms. McClurkin provided documents to counsel for Etna as a "third partial response" to the FOIA request. Doc. 15-3 at 2–4. She explained, "We have searched our files and have located

medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

13

one hundred five (105) documents that are responsive to your request. We are releasing one hundred five (105) documents in their entirety (972 pages). Other documents that we believe to be responsive still need to be reviewed for possible withholding and will be provided in a subsequent response." Doc. 15-3 at 4. She also provided a "Vaughn Index"[11] describing 105 documents (972 pages) released, the date of the documents, and a release code (for all of the documents, the release code was "Full Release"). Doc. 15-3 at 5–8.

In a mailing dated Tuesday, March 13, 2018, and received on Wednesday, March 14, 2018, Mr. Oetker provided documents to counsel for Etna, stating, "This completes our response" to the FOIA request. Doc. 15-4 at 2–8. He explained:

> We have searched our records and have located an additional five hundred fifty-five (555) documents that are responsive to your request. After consulting with our Regional Solicitor's office, we have determined that some of the information in the documents contain material that is exempt from disclosure under Exemptions 5 and 6 of the FOIA. We are releasing fifty-one (51) documents in their entirety; we are releasing one hundred fifty-five (155) documents in part, and have withheld one hundred forty-six (146) documents in full. Two hundred three (203) documents were duplicates.

Doc. 15-4 at 4. Mr. Oetker then described the exemptions. Doc. 15-4 at 4–6.

On Friday, March 16, 2018, Etna moved for summary judgment. Doc. 15. Etna explained it "is still in the process of reviewing the records received [on March 14, 2018,] to determine if [the FWS's] obligation to disclose documents is fully discharged." Doc. 15 at 5. Etna argued the FWS violated the FOIA by failing to timely

---

[11]"To enable [a court] to determine whether documents were properly withheld, [an] agency must provide a detailed description of the information withheld through the submission of a so-called 'Vaughn Index,' sufficiently detailed affidavits or declarations, or both." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009); *see Vaughn v. Rosen*, 484 F.2d 820, 826–27 (D.C. Cir. 1973). "While there is no set form for a Vaughn Index, the agency should disclose as much information as possible without thwarting the exemption's purpose." *Defs. of Wildlife*, 623 F. Supp. 2d at 88 (internal quotation marks omitted).

respond to the FOIA request and requested attorney's fees and costs. Doc. 15 at 8–12. As support for the motion, Etna filed the letters accompanying FWS's four document productions. Docs. 15-1, 15-2, 15-3, 15-4.

On April 16, 2018, the FWS filed a motion to dismiss, Doc. 18, a response to the plaintiff's motion for summary judgment, Doc. 19, and a declaration of Ms. McClurkin to support the response, Doc. 17.

In the declaration, Ms. McClurkin summarized her duties and explained that the FWS processes FOIA requests in the order received based on their track and that requests on the "exceptional/voluminous" track involve "very complex processing challenges" that "may include a large number of potentially responsive records and will take over sixty workdays to process." Doc. 17 at 4–6; *accord* 43 C.F.R. § 2.15 (excerpted in footnote 5 of this report and recommendation). She summarized how the FWS processed the FOIA request by Etna. Doc. 17 at 6–9. And she stated:

> The delay in releasing the documents responsive to the request at issue was due to the number of pre-existing FOIA requests being process[ed] on a first-in, first-out basis. This policy is based on 43 C.F.R. § 2.3(m), which states that "[r]equests in each track are processed on a first-in/ first-out basis."[12]

> The processing of the FOIA request in this case began in September 2017. Thereafter, I received numerous emails and had many telephone calls with counsel for [Etna] … about the process of this request dating back at least to October 2017. I repeatedly advised counsel for [Etna] … that the Agency was processing the request and would release the documents when release was approved. The initial release of responsive documents was not caused by or due to the threat

---

[12]Although Ms. McClurkin purports to quote from 43 C.F.R. § 2.3(m), there is no subsection (m) in that regulation, which is titled, "Where should you send a FOIA request," and that regulation does not include the assertedly quoted language. She appears to quote from the regulation providing definitions, 43 C.F.R. § 2.70, which states, "Multitrack processing means placing simple requests, requiring relatively minimal review, in one processing track and more voluminous and complex requests in one or more other tracks. Requests in each track are ordinarily processed on a first-in/first-out basis."

of litigation or the filing of this litigation. In fact, I mailed the initial release of documents before I learned of the filing of this litigation. Rather, the release of documents occurred after the levels of review were completed and approval was obtained.

In processing this FOIA request, I used my best efforts to resolve the request in this case as expeditiously as possible.

Doc. 17 at 9 (paragraph numbers omitted).

In the motion to dismiss, the FWS argued the Court lacked subject-matter jurisdiction because the completed response to the FOIA request rendered the action moot and no longer a live case or controversy. Doc. 18. In the response to the motion for summary judgment, the FWS argued Etna is not entitled to attorney's fees and costs. Doc. 19.

On April 26, 2018, Etna responded in opposition to the motion to dismiss. Doc. 23. Etna "conceded that all responsive documents have been disclosed and the request for compelling disclosure under FOIA is moot" but asked the Court to retain jurisdiction to decide if Etna is entitled to attorney's fees and costs.[13] Doc. 23 at 3.

Three months after receiving the final production of documents, on June 12, 2018, in the Ocala Division, Etna sued the FWS and others. Doc. 1 in 5:18-cv-291.

In that action (referenced at the beginning of this report and recommendation for background on Etna Turpentine Camp, the permit, the project, and the section

---

[13]In a footnote in its current motion for attorney's fees and costs, Etna states that although it had conceded the FWS disclosed all responsive information, later review of the documents raises a question of whether disclosure of all responsive information in fact had occurred. Doc. 31 at 7 n.2. Etna explains the FOIA request sought information about a "Project Development and Environment Study" begun in 2002, but the FWS disclosed no responsive documents despite that other documents suggested FWS officials would have attended meetings about the study. Doc. 31 at 7 n.2. Etna also explains the FOIA request sought all minutes about the section 106 review, but the FWS failed to disclose minutes of twenty meetings. Doc. 31 at 7–8 n.2. Etna does not contend the asserted failure to fully disclose responsive documents is a basis for an award of attorney's fees. *See generally* Doc. 31.

106 review), Etna sought declaratory and injunctive relief for alleged improper agency action under the Administrative Procedures Act, 5 U.S.C. § 706, and violations of the National Environmental Policy Act, 42 U.S.C. § 4321. Doc. 1 in 5:18-cv-291. The Court granted an emergency motion for a temporary restraining order filed by Etna, finding imminent destruction of the Etna Turpentine Camp and Withlachoochee State Forest and that, without the order, Etna would suffer "immediate and irreparable injury." Doc. 5 in 5:18-cv-291. The FWS and other federal defendants in that action argued, among other things:

> [Etna's] nearly one-year delay in suing since FWS issued the incidental take permit demonstrates that there is no emergency to warrant issuing a preliminary injunction now. [Etna's] own failure to timely advance its claims created the alleged conflict with the State's construction schedule that [Etna] now seeks to halt through the extraordinary remedy of emergency injunctive relief. That delay alone counsels against the Court finding that [Etna] has met its burden to demonstrate immediate irreparable harm.

Doc. 40 at 4 in 5:18-cv-291.

On July 9, 2018, following an evidentiary hearing in that action, the Court dissolved the temporary restraining order and denied a motion for a preliminary injunction by Etna, ruling Etna "failed to demonstrate a substantial likelihood of success." Doc. 46 at 13 in 5:18-cv-291. In the order, the Court noted that construction had begun in February 2018 and that Etna had filed the action several months later. Doc. 46 at 3 in 5:18-cv-291. One week after the order, on July 16, 2018, Etna filed a notice of voluntary dismissal of that action. Doc. 49 in 5:18-cv-291.

Returning to the action here, on August 9, 2018, Etna moved for attorney's fees and costs, Doc. 25, and provided supporting evidence, Docs. 25-1, 25-2, 25-3, 25-4, and on August 23, 2018, the FWS responded in opposition, Doc. 26. On September 7, 2018, Etna filed a notice of withdrawal of that motion, with a reservation of "the right to re-file." Doc. 28 at 1. (In its response to Etna's latest motion for attorney's fees and

costs, the FWS states that Etna did not explain the basis for the withdrawal. Doc. 32 at 3.)

On September 10, 2018, the Court conducted a status conference by telephone. Doc. 29. On the record, the Court denied Etna's motion for summary judgment as moot regarding the production of documents and without prejudice regarding an award of attorney's fees and costs, and denied the FWS's motion to dismiss without prejudice. Docs. 29, 30. The Court ordered Etna to renew its motion for attorney's fees and costs by October 12, 2018, the FWS to respond by November 9, 2018, and Etna to reply by November 26, 2018. Doc. 29, 30.

Etna's current motion for attorney's fees and costs, Doc. 31, the FWS's response in opposition, Doc. 32, and Etna's reply, Doc. 34, followed.

The invoice for services by Etna's lawyers totals $18,597.20 for work from December 1, 2017, to October 10, 2018. Doc. 31-1.

## III.   Law & Analysis

The FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

A district court has jurisdiction over a FOIA action "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Jurisdiction is based on a showing that an agency has improperly withheld agency records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980).

The FOIA is a "broad disclosure statute" evidencing a "strong public policy in favor of public access to information in the possession of federal agencies." *Cochran*

*v. United States*, 770 F.2d 949, 954 (11th Cir. 1985). The primary purpose of the FOIA is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

The FOIA provides that a "court **may assess** against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under [the FOIA] **in which the complainant has substantially prevailed**." 5 U.S.C. § 552(a)(4)(E)(i) (emphasis added).

The fees-and-costs provision is an "intentional deviation from the usual rule that each party pays its own attorney's fees." *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 205 (D.D.C. 2016). Congress enacted the provision "to remove the incentive for administrative resistance to disclosure requests based not on merits … but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation."[14] *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711 (D.C. Cir. 1977). "By contrast, no attorneys' fees reward is due if, as it turns out, recourse to the judicial system was unnecessary." *Conservation Force*, 160 F. Supp. 3d at 205.

To decide a motion for attorney's fees and costs under the provision, a court must decide as a threshold matter whether the plaintiff is eligible for them. *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 524 (D.C. Cir. 2011); *Abernethy v. IRS*, 909 F. Supp. 1562, 1567–68 (N.D. Ga. 1995), *aff'd,* 108 F.3d 343 (11th Cir. 1997). If a plaintiff is eligible for them, a court next must decide whether the plaintiff is entitled to them. *Brayton*, 641 F.3d at 524; *Abernethy*, 909 F. Supp. at 1567–68. If a plaintiff is eligible for and entitled to them, the court next must decide whether the requested

---

[14]The FOIA did not include an attorney's fees provision until 1974. *Blue v. Bureau of Prisons*, 570 F.2d 529, 532 (5th Cir. 1978).

amounts are reasonable. *Judicial Watch, Inc. v. U.S. Dep't of Comm.*, 470 F.3d 363, 369 (D.C. Cir. 2006); *Long v. U.S. IRS*, 932 F.2d 1309, 1313–14 (9th Cir. 1991).

To be eligible for attorney's fees, a plaintiff must have "substantially prevailed" in the FOIA action. 5 U.S.C. § 552(a)(4)(E)(i). "A district court's determination that a party did not substantially prevail will only be reversed if clearly erroneous." *Chilivis v. SEC*, 673 F.2d 1205, 1212 (11th Cir. 1982).

A plaintiff "substantially prevailed" if he obtained relief through either "(I) a judicial order, or an enforceable agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the [movant's] claim is not insubstantial."15 5 U.S.C. § 552(a)(4)(E). The first avenue applies if there is a "judicially sanctioned change in the legal relationship between the parties." *Davy v. CIA*, 456 F.3d 162, 166 (D.C. Cir. 2006). The second avenue applies if the lawsuit was the catalyst for disclosure. *Chilivis*, 673 F.2d at 1212.

Etna proceeds under the second avenue only. *See generally* Doc. 31.

If, as here, a plaintiff receives all documents requested, even late, his FOIA claim is moot to the extent that he sought the documents. *Lovell v. Alderete*, 630 F.2d 428, 430–31 (5th Cir. 1980). But mootness "does not automatically preclude an award" of attorney's fees and costs. *Id.* at 431. A plaintiff can still establish eligibility under the second avenue, but to do so "must show that prosecution of the action could reasonably be regarded as necessary to obtain the information and that the action

---

15Congress added this definition of "substantially prevailed" through the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524 (2007), to abrogate *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001), which had generally limited eligibility to times when a court awards relief. *Brayton*, 641 F.3d at 525. "The purpose and effect of this law, which remains in effect today, was to change the 'eligibility' prong back to its pre-*Buckhannon* form." *Id.* Courts therefore rely on pre-*Buckhannon*, pre-Act cases to interpret eligibility. *See, e.g.*, *Von Grabe v. U.S. Dep't. of Homeland Security*, 440 F. App'x 687, 688–89 (11th Cir. 2011).

had a substantive causative effect on the delivery of the information." *Id.* at 432. That showing is "necessarily fact-specific." *Conservation Force*, 160 F. Supp. 3d at 205.

"The mere fact" that an agency did not release requested documents until after the plaintiff sued, "without more," is insufficient. *Lovell*, 630 F.2d at 432; *see also Chilivis*, 673 F.2d at 1212 ("The record reveals that the SEC failed to release a large number of documents until after plaintiff initiated judicial proceedings. Nonetheless, such a factor does not conclusively establish that plaintiff substantially prevailed."); *Pub. Law Educ. Inst. v. U.S. Dep't of Justice*, 744 F.2d 181, 183 (D.C. Cir. 1984) (explaining that although timing is relevant, something "more than *post hoc, ergo propter hoc* must be shown"). Rather, the agency would have to oppose the release of information, and the plaintiff would have to show he substantially prevailed. *Bullard v. Webster*, 623 F.2d 1042, 1047 (5th Cir. 1980).

To support eligibility, Etna emphasizes that the FWS exceeded the timeline the FWS created, the FWS provided no responsive documents until after Etna filed this case, and Etna received a "substantial amount of information" that the FWS had initially failed to locate or disclose after Etna filed this case. Doc. 31 at 12–13. According to Etna:

> [Etna] has substantially prevailed in the FOIA lawsuit, as the [FWS] has voluntarily disclosed the non-exempt documents responsive to the FOIA request after notice of intent to sue and subsequent initiation of the present lawsuit, the latter three of the four disclosures with a significant shorter turnaround time after service of the lawsuit, … despite … counsel's repeated correspondence with Ms. McClurkin and other [FWS] representatives on the status of the outstanding request and dispute resolution attempts prior to engaging in litigation. … [A]s the litigation has resulted in substantially quicker release of the requested documents, it is therefore apparent that the prosecution of the … lawsuit … was "reasonably necessary" to obtain the requested records.

Doc. 31 at 13–14.

The FWS counters that Etna fails to satisfy its burden of showing eligibility because the FWS points to no more than timing of the disclosures. Doc. 32 at 4–5. The FWS observes it never refused to provide documents and contends a requester cannot show an agency voluntarily or unilaterally changed its position if the agency never refused to produce documents. Doc. 32 at 5; *see also* Doc. 26 at 10–12. The FWS emphasizes that, before Etna sued, the FWS informed Etna that it was searching for documents, that it was reviewing documents, and that it expected to release documents on November 17, 2017. Doc. 32 at 6. The FWS adds that it first released documents before service of the summons and complaint. Doc. 32 at 8. The FWS concludes, "[I]t cannot be credibly argued that the instant lawsuit was the impetus or reason for the release of documents." Doc. 26 at 12.

Considering the record as a whole, Etna has not met its burden of showing it "substantially prevailed" in this action. *See* 5 U.S.C. § 552(a)(4)(E)(i) (quoted). In other words, Etna has not met its burden of showing that "prosecution of the action could reasonably be regarded as necessary to obtain the information and that the action had a substantive causative effect on the delivery of the information." *See Lovell*, 630 F.2d at 432 (quoted).

The FWS never opposed the release of information. Before service of the summons and complaint and before the threat of litigation, Ms. McClurkin acknowledged receipt of the FOIA request (September 5). Doc. 1-2 at 2. Ms. McClurkin explained that the FWS handles FOIA requests on a "first in, first out basis" and that responsive documents were with a point-of-contact for review (October 20). Doc. 1-5 at 2. Ms. McClurkin explained that she was reviewing responsive documents, would route them to the Solicitor when she finished her review, would aim for November 17 to provide the first partial response, would continue working on the remaining responsive documents, and would release them once they were reviewed and approved for release (November 1). Doc. 1-6 at 2. Ms. McClurkin explained the Regional Director had just signed the first partial response, she would

mail them to the Solicitor that day, and she would check with the point-of-contact on the second partial response (November 22, 2017). Doc. 1-8 at 2. The day after the threat of litigation, Ms. Hyde-Michaels repeated that the FWS handles FOIA requests on a "first in, first out basis," added that Etna's request was tenth in line in the region on the "exceptional/voluminous" track, and promised that the FWS would continue to "work diligently" on the request (December 6). Doc. 1-10 at 2. Before service, the FWS provided the first partial response (December 22), and within three months provided a second partial response (February 1), a third partial response (March 9), and a final response (March 13). Docs. 15-1, 15-2, 15-3, 15-4. All told, in the approximately six-month period between when the FOIA request was received (September 5) and when the FWS sent the final response (March 13) the FWS located and reviewed 755 documents and produced a portion of them. *See* 15-1–15-4.

Given the absence of opposition to the FOIA request, the pre-action communications indicating action on the FOIA request (consideration, collection, and review), the steady albeit arguably slow progress, and the regulatory process (track assignments, first-in, first-out policy), prosecution of this action cannot be reasonably regarded as "necessary to obtain the information and that the action had a substantive causative effect on the delivery of the information." *See Lovell*, 630 F.2d at 432 (quoted).

Cases applying the "substantially prevailed" standard to similar facts support this conclusion.

In *Verde v. FAA*, the plaintiff argued "his lawsuit catalyzed the vast bulk of the [agency]'s production." 287 F. Supp. 3d 661, 669–70 (S.D. Tex. 2018). Ruling against the plaintiff, the court explained that the plaintiff "resembles prior complainants who were held not to have substantially prevailed, despite obtaining documents midway through litigation." *Id.* at 670. The court observed that the agency had faced an administrative backlog, had notified the plaintiff early on that his appeal would take time to process, and had experienced delay because of the "unintentionally

voluminous scope" of the FOIA request. *Id.* The court found that the agency's internal appeals process eventually resolved the issue, and the "workings of that process" explained the agency's production "at least as well as does the filing of [the plaintiff's] summary judgment motion." *Id.* The court noted that the plaintiff had sued only a few weeks after the agency notified him the administrative backlog would slow resolution, that the agency had not overly delayed, and that the agency had remained in contact with him. *Id.*

In *Gahagan v. USCIS*, an immigration lawyer sought government records of a client facing immigration enforcement. No. 14-1268, 2015 WL 6738537, at *1 (E.D. La. Nov. 4, 2015) (unpublished). The agency failed to respond promptly, and the lawyer sued. *Id.* The agency notified the lawyer that another agency would handle part of his request, and that 5,020 requests preceded his in line. *Id.* at *3. One month after the lawyer sued, the agency produced hundreds of pages of documents. *Id.* at *1. Ruling against the plaintiff, the court explained, "[W]hen plaintiffs … are aware that administrative problems are causing the government to delay in disclosing requested information, but pursue a FOIA lawsuit in spite of this knowledge, they are generally held not to have prevailed when the administrative problems are overcome, the information is produced, and the plaintiff is unable to show that the lawsuit caused the production." *Id.* at *3.

For other analogous cases, see *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1496–97 (D.C. Cir. 1984) (reversing order finding that the plaintiff had "substantially prevailed" where the government began producing documents—ultimately tens of thousands of pages—two years into litigation; it was unclear from the record that the lawsuit caused the agency to release the documents, the record showed a "strong possibility" that the agency had disclosed the "vast bulk" of the documents because of its administrative processing of the FOIA request, the agency had warned the plaintiff early on that it was facing an "overwhelming backlog of FOIA requests" and that his requests were voluminous, and the plaintiff tried to "shortcut" the

administrative line by suing after learning about the backlog), *Conservation Force*, 160 F. Supp. 3d at 205 (holding that the plaintiff had not shown it "substantially prevailed" because, although the agency had produced documents after the plaintiff sued, no averments or other facts in the record showed the agency produced them because of the lawsuit, and there was no "about-face" from an initial agency refusal), *Am. Bird Conservancy v. U.S. Fish & Wildlife Serv.*, 110 F. Supp. 3d 655, 665–66 (E.D. Va. 2015) (holding that the plaintiff had not shown it "substantially prevailed" because it had not contradicted an agency declaration that the lawsuit had not prompted the agency's actions), *Calypso Cargo Ltd. v. USCG,* 850 F. Supp. 2d 1, 4–6 (D.D.C. 2011) (holding that the plaintiff had not shown it had "substantially prevailed"; the agency began processing the FOIA request before the lawsuit but, because of the volume of records, released documents months after the complaint was filed), and *Bigwood v. Def. Intelligence Agency*, 770 F. Supp. 2d 315, 321 (D.D.C. 2011) (holding that the plaintiff had not shown he had "substantially prevailed"; the agency had a significant backlog of FOIA requests and had spent considerable time and effort processing the broad request before he sued).

In contrast, circumstances in which courts have found that a plaintiff "substantially prevailed" are absent here. See, for example, *Cazalas v. U.S. DOJ*, 660 F.2d 612, 620 (5th Cir. Nov. 1981) (holding that the plaintiff "substantially prevailed" where the agency released "two very important pieces of information … under circumstances that indicate that [the plaintiff's] persistence, and the institution of the FOIA complaint … had a substantial causal effect on the delivery of that information") (internal quotation marks omitted), *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1388 (8th Cir. 1985) (holding that the plaintiff "substantially prevailed" where the defendant repeatedly stated it possessed few or no responsive documents until the plaintiff sued), *Dorsen v. SEC*, 15 F. Supp. 3d 112, 115–16, 119–20 (D.D.C. 2014) (holding that the plaintiff "substantially prevailed" where the agency reversed its position on exemptions after the lawsuit was filed and provided the information), *Sikes v. United States*, 987 F. Supp. 2d 1355, 1373–74 (S.D. Ga. 2013) (holding that

the plaintiff "substantially prevailed" where the agency provided the documents a little more than a month after he sued; the agency provided "inconsistent, if not disingenuous, justifications for withholding the material," suggesting the agency "withheld the requested materials in bad faith" until the plaintiff sued; and "the extensive correspondence" demonstrated the plaintiff had not prematurely resorted to litigation), and *Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225, 232–33 (D.D.C. 2012) (holding that the plaintiff "substantially prevailed" where the agency admitted that, in preparing its motion for summary judgment and months after it had ceased administrative processing and issued a final determination, the agency determined it could produce the information).

To support that the action caused the production, Etna emphasizes that the FWS produced all documents after the threat of litigation, most documents after service, and the last batch of documents within days of the deadline to move for summary judgment. Doc. 31 at 12–14. At a minimum, however, the other facts make it at least as likely that the FWS's administrative processing of Etna's request—not the lawsuit or imminent deadline for Etna to file a motion for summary judgment— caused the phased production.

Etna asserts, "It is clear that Congress intended for FOIA to allow for an award of attorney's fees and costs to the prevailing petitioner so that private citizens and organizations are not precluded from seeking legal recourse, nor from building a winnable case or hiring competent counsel, for lack of legal funding." Doc. 31 at 11. Etna continues, "Otherwise, non-profit organizations, such as [Etna] would be chilled from seeking government compliance by court order if such an endeavor carried the risk of bankrupting organizations." Doc. 31 at 11. While public policy considerations may well favor Etna, those do not govern whether Etna has met its burden to show it had "substantially prevailed." *See* 5 U.S.C. § 552(a)(4)(E)(i) (quoted).

Pointing to the correspondence between FWS officials and Etna's counsel, Etna argues that it "has been unequivocally clear that there was an urgent need for

disclosure of the document so that public review can be made to ensure compliance with environmental statutes before irreparable damage was done as a consequence" of issuance of the permit. Doc. 31 at 5–7 (citing Docs. 1 ¶ 34, 1-4, 1-7, 1-9, 1-11). Etna observes that, despite the expressed urgency and Etna's narrowing of the FOIA request, FWS officials did not adhere to the "timeframes promised" and otherwise delayed, making the final production 129 working days after receiving the FOIA request. Doc. 31 at 6, 9–10. While it is true the FWS did not provide a first partial response by November 17, 2017, as Ms. McClurkin had promised, Doc. 1-6 at 2, that failed promise shows less that the lawsuit prompted responses and more that the FWS was trying to respond to the FOIA request as best it could under its track process and "first-in/first-out" policy. *See* 43 C.F.R. § 2.70 (quoted).

Etna contends that the FWS's position that the action could not have caused the FWS to disclose documents considering that the FWS's first release occurred before Etna served process "is not supported by the facts," pointing to the December 5, 2017, letter Etna's counsel sent Ms. Hyde-Michaels warning of impending litigation. Doc. 31 at 14 (citing Doc. 1-9). But besides chronology—which does not suffice—Etna offers nothing to show the warning prompted production of documents; to the contrary, the correspondence between Etna's counsel and Ms. McClurkin in November 2017 indicates the Etna's request was already in the gather-and-review pipeline before the warning letter.

Etna contends it was "substantially harmed" by the delay. Doc. 31 at 7. Etna summarizes the timeline and explains it could not have filed the related action in the Ocala Division before analyzing the requested documents. Doc. 31 at 7–10. Etna complains about how, in the related action, the FWS argued Etna had created its own emergency, and the Court mentioned the date construction began and the date the related action was filed in its order denying Etna's motion for a preliminary injunction. Doc. 31 at 7–9. Etna argues the FWS "essentially used the FOIA delay as a sword and now attempts to use it as a shield to prevent an award of attorney's

fees[.]" Doc. 31 at 9. The FWS's reliance on delay in that manner may have been inappropriate, but considering that Etna failed in the related action not because of delay but because Etna "failed to demonstrate a substantial likelihood of success," it is unclear how any delay harmed Etna. *See* Doc. 46 at 13 in 5:18-cv-291. In any event, whether any delay harmed Etna is not pertinent to whether Etna "substantially prevailed." *See* 5 U.S.C. § 552(a)(4)(E)(i) (quoted).

In short, Etna has not met its burden of showing it "substantially prevailed" and thus is ineligible for attorney's fees and costs under the FOIA.

In the interest of judicial economy, this report and recommendation does not analyze whether Etna would be entitled to attorney's fees and costs if eligible to receive them[16] or whether the requested attorney's fees and costs are reasonable.[17] If the Court concludes Etna is eligible for attorney's fees and costs, the undersigned

---

[16]To decide entitlement, a court considers four factors: (1) the public benefit derived from the action; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents. *Chilivis*, 673 F.2d at 1212 n.16. A court also may consider any relevant equitable factor that may affect the balancing of the factors in light of the "fundamental legislative policies" underlying FOIA. *Lovell*, 630 F.2d at 431. Ultimately, the decision on whether a plaintiff is entitled to attorney's fees and costs "rests in the sound discretion of the district court." *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 590 (D.C. Cir. 1981).

On entitlement, Etna contends all four factors favor an award of attorney's fees and costs. Doc. 31 at 16–20. The FWS argues the first and fourth factors disfavor an award of attorney's fees. Doc. 26 at 13–14; Doc. 32 at 6–9.

[17]To determine the reasonableness of statutory attorney's fees, a court applies the lodestar approach. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The "starting point" is a calculation of the lodestar, which is "the number of hours reasonably expended … multiplied by a reasonable hourly rate." *Id.* To arrive at a reasonable amount, the court then must consider factors that may require an adjustment of the lodestar. *Id.* at 433–37. The movant has "the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id.* at 437.

On reasonableness, the FWS disputes the $250 hourly rate for Ms. Mahaffey, the $350 hourly rate for Mr. Hartsell, and some hours claimed as assertedly unrecoverable, unnecessary, wasteful, redundant, clerical, or unsupported. Doc. 32 at 9–17.

stands ready to expeditiously enter a report and recommendation on entitlement and reasonableness with no need for more briefing by the parties.

## IV.  Recommendation[18]

The undersigned recommends **denying** Etna's motion for attorney's fees and costs based on ineligibility, Doc. 31, and **directing** the clerk to close the file.

**Done** in Jacksonville, Florida, on July 9, 2019.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:   The Honorable Marcia Morales Howard
     Counsel of Record

---

[18]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.